UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CONAN DOYLE ESTATE LTD., <br><br> PLAINTIFF, <br><br> V. <br><br> THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A, <br><br> DEFENDANTS. | CASE NO.: 1:21-CV-05067 <br><br> JUDGE ANDREA R. WOOD <br><br> MAGISTRATE JUDGE JEFFREY COLE <br><br> **FILED UNDER SEAL** |

**PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER**

Plaintiff, Conan Doyle Estate, Ltd., ("Conan Doyle Estate" or "Plaintiff") hereby submits its Supplemental Brief in Support of Plaintiff's Motion for Temporary Restraining Order, pursuant to Docket Entry No. 16.

I. THE "SHERLOCK HOLMES" TRADEMARK & BRAND

The main trademark at issue in this case[1] is the following word mark "Sherlock Holmes"

| TRADEMARK REGISTRATION ||||
|---|---|---|---|
| REG. NO. | WORD MARK | CLASS(ES) | REG. DATE |
| 5,906,240 | SHERLOCK HOLMES | IC 025. US 022 039. G & S: Clothing, namely, trousers, coats, vests, neckties, bow ties, capes, suspenders, cummerbunds, hats, skirts, dresses, trews, kilts, scarves, aprons, jackets, pyjamas, bathrobes, knickerbockers, and plus fours; footwear, namely, shoes and slippers; headwear, namely, flat caps, caps, and deerstalker hats. | Nov. 12, 2019 |

The Sherlock Holmes trademark is a narrowly tailored mark, covering only specific clothing items.

In the present case, the majority of the counterfeit products sold by the Defendants are: coats and

---

[1] A complete list of Plaintiff's trademarks was submitted as Exhibit 1 to the Complaint.

deerstalker hats. Plaintiff also sells these products through its own e-commerce website, as well as through other authorized vendors. Defendants are offering for sale unauthentic counterfeit goods, of inferior quality, using the Sherlock Holmes trademark in association with the products.



| **PLAINTIFF'S AUTHENTIC PRODUCT** | **EXAMPLE OF DEFENDANTS' COUNTERFEIT PRODUCT** |

Defendants use the Sherlock Holmes mark, not to describe the counterfeit products, but in a source-indicative manner, and thus, is not a "fair use" of Plaintiff's trademark. Additionally, as "descriptive" words cannot be registered trademarks, the USPTO's issuance of the trademark registration establishes that the word mark "Sherlock Holmes" meets the threshold for being more than merely descriptive.

In trademark law, marks are placed along a continuum of distinctiveness. If a mark is classified as *not* being inherently distinct, the mark must acquire distinctiveness in consumers' minds to achieve trademark status. That acquired distinctiveness is called a "secondary meaning." Secondary meaning is a new and additional meaning that attaches to a mark. The public then uses that mark to identify and distinguish a single commercial source. Secondary meaning does not require proof that consumers know the name of the company that owns the trademark; rather, it requires that consumers associate the mark with a single commercial source.

Insofar as there may be common elements or themes associated with the word mark, Plaintiff has invested significant time, money, and effort in promoting the Sherlock Holmes mark, and in developing the goodwill associated therewith. These efforts have caused the public to associate secondary meaning with the Sherlock Holmes name and trademark, and when the public sees the mark, it is immediately associated with the Conan Doyle Estate. As such, the Sherlock Holmes name has acquired a "secondary meaning" associated with it by the public – meaning, in the eyes of consumers, "Sherlock Holmes" is more than just a character in a movie or a book. Consumers have come to attribute the trademark as specifically being associated with the Conan Doyle Estate. Accordingly, as secondary meaning indicates that although the mark is on its face descriptive of the goods or services, consumers recognize the mark as having a source indicating function.

## II. PUBLIC DOMAIN

Plaintiff does not argue that the Sherlock Holmes character is in the public domain. However, Plaintiff, in this case, does not seek to enforce any copyrights previously held which cover the actual character. Rather, Plaintiff seeks to enforce its valid and federally registered trademark, as used in association with those products covered by that mark.

## III. DEFENDANTS' USE OF THE "SHERLOCK HOLMES" TRADEMARK

The Defendants brought into the present case were identified and included because each Defendant meets the specific requirements under the Lanham Act for trademark counterfeiting and infringement, as well as the requirements for False Designation of Origin. Plaintiff does not bring a wide variety of Defendants, and all Defendants use the "Sherlock Holmes" trademark in a manner constituting trademark infringement, likely to cause consumer confusion and mislead the consumer as to the source of the infringing products.

A. ADDITIONAL CONTEXT ESTABLISHING TRADEMARK INFRINGEMENT

    i.    *Use of the "Sherlock Holmes" Trademark in the Product Titles*

Notably, all of the Defendants use the "Sherlock Holmes" trademark in a similar manner: the trademark appears prominently in the product titles and listings. As Judge Alonso just recently addressed, in a similar case, when a defendant uses a word mark in the title of a product listing, there is a much higher likelihood of consumer confusion as to the origin or source of the product. *See e.g., H-D, U.S.A, LLC v. The Partnerships and Unincorporated Associations Identified on Schedule "A",* Case No. 21-cv-03581 (N.D. Ill. September 2021) (Alonso) (finding that the e-commerce defendant's use of the trademark in the product listing title, as opposed to the trademark being located elsewhere in the listing – for example, in the "details" or "specifications" sections – did not constitute fair use). Unless the Defendants specifically intended for consumers to equate their products with a Sherlock Holmes product, there would be no other reason to include that trademarked name in the title of its product. *Id.*

Additionally, the placement of "Sherlock Holmes" in the Defendants' product listing titles, where one would expect to find the source-identifiers of a product, instead of simply mentioning "Sherlock Holmes" in the descriptions or potential uses for the products is further indicative of the Defendants' underlying attempts to associate their unauthorized products with those of the Plaintiff. *Id.; See e.g., Bell v. Harley Davidson Motor Co.*, 539 F. Supp. 2d 1249, 1258 (N.D. Ill. 2008); *H.D, U.S.A, LLC v. The Partnerships*, Case No. 21-cv-03581.

Furthermore, the use of additional filler and descriptive words (for example: hat, costume, cap, kids, adult, tweed) in a product listing does not negate the use of the trademark. The inclusion of the Sherlock Holmes trademarked name in the products' titles and descriptions creates a

4

confusion amongst consumers that this product originated from the Conan Doyle Estate's Sherlock Holmes brand.

Defendants do not use the Sherlock Holmes mark in a descriptive manner, as the placement of the trademark in the product titles indicates possession, rather than description. To illustrate: Defendants use the "Sherlock Holmes" mark as a noun and/or in a manner that suggests that the noun is possessive, and, indeed, often even include the possessive apostrophe after the Sherlock Holmes mark, indicating to a potential consumer that it is from the owner of Sherlock Holmes:

> Sherlock Holmes' Vintage Wooden Tobacco Pipe Bucket Hats Beautiful Summer Travel Beach Sun Hat Black

If Defendants intended to simply describe the products, the use of the mark would be as an adjective, simply modifying the noun – for example, "hat like Sherlock Holmes" ("hat" being the noun, "Sherlock Holmes" being the adjective).

    ii.   *Use of Additional Misleading Words in Product Titles*

Defendants in this case also use the "Sherlock Holmes" trademark in conjunction with other words that tend to suggest that the Defendants' products are licensed or otherwise authentic Sherlock Holmes products. For example, many Defendants use the following words in and throughout their product listings and descriptions, suggesting that the source of the products is Plaintiff: new, authentic, brand Sherlock Holmes, Sherlock Holmes brand, genuine, real, official, with tags, etc. When viewed in context of the rest of the product listing, the use of these words is further evidence of Defendants' intent to mislead consumers and to trade on the valuable goodwill of the Sherlock Holmes trademark.

5

### iii. Use of Sherlock Holmes Television/Movie Characters

The Conan Doyle Estate invests substantial time and money in the licensing of the Sherlock Holmes trademarks and intellectual property, information prominently displayed on the official website of the Conan Doyle Estate:



authurconondoyle.com/licensing.html & conandoyleestate.com/licensing/character/sherlock-holmes

Sherlock Holmes is one of the Conan Doyle Estate's most successfully licensed characters. As such, when Defendants use the "Sherlock Holmes" mark in conjunction with imagery from a movie or show featuring a Sherlock Holmes character – which many Defendants in the present case do – consumers are further likely to believe that the product in question, even if it does not

come directly from the Conan Doyle Estate, is a product which is officially licensed and authentic. Please see below for example:



    iv. *Use of Sherlock Holmes on Products*

In addition to using the "Sherlock Holmes" trademark in the infringing products' listing titles and throughout the description, Defendants also use the trademark on the products themselves, for example:



7

B. **DEFENDANTS' USE OF THE "SHERLOCK HOLMES" TRADEMARK IS NOT "DESCRIPTIVE"**

"Sherlock Holmes" does not describe any of the at-issue products' characteristics. Rather, the Conan Doyle Estate sells its products (hats, jackets, clothing, etc.) under the "Sherlock Holmes" trademark. *See e.g., H-D, U.S.A, LLC v. The Partnerships and Unincorporated Associations Identified on Schedule "A",* Case No. 21-cv-03581 (N.D. Ill. September 2021) (Alonso). "Sherlock Holmes" is not a type of hat or a type of jacket; thus, using the words "Sherlock Holmes" to describe a hat would be an improper reading of the plain language of the product titles. "Sherlock Holmes" is not descriptive. A "Sherlock Holmes" hat is a product protected by a federally registered trademark. By further way of example, the vast majority of the Defendants use actually descriptive words in the product titles of the infringing and counterfeit goods: hat, cap, deerstalker hat, tweed, two-flaps, wool, houndstooth, costume, cosplay outfit, for kids, for adults, etc. These are the words in the product listing which are descriptive.

For the majority, if not all, of the product listings in question, the use of the words "Sherlock Holmes" is entirely unnecessary to describe the product, which indicates that the intention of the Defendants is not to describe the product, but to trade upon the goodwill and trademark of Plaintiff. To be clear, Plaintiff understands that the word mark "Sherlock Holmes" can be used in a descriptive matter constituting fair use; however, in the present case, that is not how Defendants are using the "Sherlock Holmes" mark.

To illustrate, please see below for Plaintiff's distinctions and interpretations of what constitutes a "fair use" or "descriptive" use of the words "Sherlock Holmes" versus how the trademark is used by the Defendants in this case, which amounts to trademark infringement:



|  | FAIR USE / DESCRIPTIVE USE | TRADEMARK INFRINGEMENT |
|---|---|---|
| Product Listing Title | - Deer stalker hat for cosplay detective British<br>- Costume accessories for a Sherlock Holmes outfit<br>- Halloween costume jacket for a Sherlock Holmes costume<br>- World's greatest detective cosplay deerstalker hat<br>- Distinctive deerstalker hat with flaps and ribbon ties<br>- Deerstalker hat famously worn by the fictional detective<br>- Sherlock Holmes inspired hat | - Sherlock Holmes hat<br>- Sherlock Holmes costume<br>- Sherlock Holmes jacket<br>- Sherlock Holmes' deerstalker hat |
| Product Listing Title | "Sherlock Holmes Style Detective Faux Pipe Costume Accessory Prop" | "Men's Sherlock Holmes Jacket Real Shearling Fur Black Wool Leather Jacket Coat"<br>Def. No. 42. DecorHut |
| Product Listing Title | "Sherlock Holmes Inspired Hand Knitted Scarf" | "2019 New Brand Sherlock Holmes Hat . . ."<br>Def. No. 19. TUDOU Store |
| Use of the Trademark (Location) | **In the Specifications / Description Section:**<br>". . . deerstalker style hat resembling the hat worn by Sherlock Holmes as seen in the classic books and movies." | **In the Product Listing / Title:**<br>"Brand Sherlock Holmes . . . "<br>Def. No. 7. PLOERMIN Official Store |

9

C.  DEFENDANTS USE THE SHERLOCK HOLMES MARK IN COMMERCE

Assuming, arguendo, that Defendants are using Plaintiff's trademark in a "descriptive" way, and that any Defendant would be able to successfully prevail on that fair use defense, Plaintiff argues that, apart from using the trademark as a source identifier in the product listings, Defendants are, at a minimum, using the "Sherlock Holmes" mark to advertise their unauthorized products. To illustrate, Plaintiff does not necessarily take issue with many of the actual products being sold by Defendants, the infringement arises out of Defendants' use of Plaintiff's protected mark to sell those products, in the product listing titles, product descriptions, keywords, and in the metadata and search tags used by Defendants. Defendants use the "Sherlock Holmes" trademark in their product listings in an effort to rank higher in searches being conducted by consumers seeking authentic Sherlock Holmes products. The use of the trademark in the listing is not done in a descriptive manner, rather the inclusion thereof is in an effort to use the trademark as a keyword, leading unknowing consumers to believe that Defendants' product is an authentic Sherlock Holmes product.

Defendants often use many terms and keywords in the product title itself; and while the title is used to indicate the type of product being sold, it is not meant to be the name of the product. Defendants strategically use as many keywords in the title as allowed by the marketplace, as it is the most effective way to: a.) target consumers searching for authentic brand name products; b.) appear higher in consumer searches; and, c.) to evade trademark lawsuits. For example, while both of the following examples are infringing upon Plaintiff's "Sherlock Holmes" trademark, an infringer that uses the product title "Sherlock Holmes Hat," is more likely to be brought into a trademark infringement lawsuit than an infringer using the product title "Movie Character

Detective Sherlock Holmes Costume Halloween Cosplay Adult Great Detective Costume"[2] who is less likely to be caught and identified by brand enforcement searches. The inclusion of these additional words goes to show that Defendants are acting in bad faith, with the ultimate goal being to trade upon the goodwill and brand that Plaintiff has created in order to obtain monetary gain from the sale of their counterfeit products.

When evaluating whether there has been a trademark infringement, a Defendant's overall intent must be taken into consideration. *See e.g., H-D, U.S.A, LLC v. The Partnerships,* Case No. 21-cv-03581 (N.D. Ill. September 2021) (Alonso) (taking into consideration other factors apart from Defendant's product listing to determine intent, finding that Defendant's account name, which was similar to another brand name weighed in favor of finding that Plaintiff established a reasonable likelihood of success on the merits, stating, "Although this does not directly indicate Defendant's intent with respect to the . . . trademarks, it is a factor the Court considers when evaluating Defendant's overall intent in using the . . . trademarks.").

IV. **IRREPARABLE HARM**

Here, the irreparable harm that Plaintiff is and will continue to suffer takes the form of lost consumer confidence and damage to Plaintiff's goodwill, a form of damage that courts have repeatedly found can constitute irreparable harm. *See Luxotica USA LLC* v. *The Partnerships and Unincorporated Associations Identified on Schedule A.* Case No. 14-cv-9061, 2015 WL 3818622, at *4 (N.D. Ill. June 18, 2015) (citing *Re/Max N. Cent., Inc.* v. *Cook*, 272 F.3d 424, 432 (7th Cir. 2001)). Moreover, Plaintiff spent significant time and resources advertising and promoting its products, which strongly indicates "that the mark has significant economic value as a source identifier" and that "[a]ny infringement that impedes that identifying function will cause

---

[2] Defendant No. 1. AW cos Store

11

significant harm." *Nat'l Fin. Partners Corp.* v. *Paycom Software, Inc.,* Case No. 14-cv-7424, 2015 WL 3633987, at *12 (N.D. Ill. June 10, 2015). Without injunctive relief, Plaintiff would have no way to protect its registered marks and goodwill.

V.    CONCLUSION

Based on the analysis of the applicable factors and evidence presented, Plaintiff respectfully requests that this Court find that Plaintiff has carried its burden and demonstrated a reasonable likelihood of success on the merits warranting the imposition of a Temporary Restraining Order, especially in the absence of adversarial presentation.

Dated: October 7, 2021            Respectfully submitted,

                                                   */s/ Ann Marie Sullivan*
                                                   Ann Marie Sullivan
                                                   Alison Carter
                                                   Sofia Quezada
                                                   AM Sullivan Law, LLC
                                                   1440 W. Taylor St., Suite 515
                                                   Chicago, Illinois 60607
                                                   Telephone: 224-258-9378
                                                   E-mail: ams@amsullivanlaw.com

                                                   ***ATTORNEYS FOR PLAINTIFF***